**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JEFFREY J. JOHNSON,**

       **Petitioner,**

      v.

**WARDEN, MADISON
CORRECTIONAL INSTITUTION,**

    **Respondent.**

      **CASE NO. 2:12-CV-234
      JUDGE GREGORY L. FROST
      Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's *Return of Writ*, Petitioner's *Traverse,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The convictions herein are contained in two different case numbers, namely, No. 08CR-09-6639 ("No. 6639"), and No. 09CR-09-3535 ("No. 3535"). On September 9, 2008, appellant was indicted in case No. 6639 for one count of burglary and one count of vandalism. On June 15, 2009, appellant was indicted in case No. 3535 for three counts of burglary, one count of theft, two counts of receiving stolen property, two counts of tampering with evidence and one count of possessing criminal tools. Though not part of this appeal, appellant was also indicted on May 22, 2009 in case No. 09CR-3101 for one count of attempted burglary and one count of possessing criminal tools.
>
> Appellant waived his right to a jury trial, and all three cases were tried to the bench beginning on November 3, 2009. At the conclusion of the bench trial, appellant was found guilty of burglary and

vandalism as set forth in case No. 6639 and two counts of receiving stolen property as set forth in case No. 3535. Appellant was found not guilty on all remaining counts. A sentencing hearing was held on January 14, 2010, and appellant was sentenced to an aggregate term of incarceration of six years and six months.

The testimony relevant to this appeal which was adduced at trial is as follows. Mamadou Ndiaye rented an apartment at 1842 Brimfield Road ("Brimfield apartment"), to appellant's mother, Crystal Carson, beginning December 15, 2007. According to Mr. Ndiaye, Ms. Carson lived at the Brimfield apartment with appellant and his brother. However, Mr. Ndiaye testified that he had to begin eviction proceedings in February 2008 for failure to pay rent. Mr. Ndiaye testified that it was not until May 3, 2008, that the family moved out. According to Mr. Ndiaye, after Ms. Carson moved out on this date, he went to the apartment with the new tenant, Georgia Minniefield, to change the locks. After the locks were changed, Mr. Ndiaye testified that he left Ms. Minniefield at the apartment with the new keys.

Ms. Minniefield testified that she went to the Brimfield apartment on May 3, 2008, and saw people moving things into a U-Haul truck. Upon inquiry, Ms. Minniefield was told that they would be done moving out by 6:00 p.m. that evening. Therefore, Ms. Minniefield returned to the apartment at approximately 7:00 p.m. with Mr. Ndiaye who changed the locks and gave her the new keys. According to Ms. Minniefield, she stayed at the apartment and cleaned until about 11:00 p.m. that night. However, when Ms. Minniefield returned the next morning, the apartment had been "trashed." Ms. Minniefield testified that bleach had been thrown on the carpet, the drywall had been damaged, the ceiling fan had been damaged, cabinets had been ripped from the walls, and "Fuck you, bitch" had been painted on the basement wall.

Cynthia Kerkes testified that on May 3, 2008, she lived next to the Brimfield apartment and saw the residents of the apartment moving their belongings into a U-Haul truck. Ms. Kerkes then saw appellant, his brother, and a girl return to the apartment around 11:30 p.m. that night. Ms. Kerkes testified that she saw the three go to the back of the residence and that at approximately 1:00 a.m., she heard the car leave.

Kadia Sesay ("Sesay") testified that on May 3, 2008, she was dating appellant's brother, Chris Jones ("Jones"). Sesay testified that on the night of May 3, 2008, she, Jones, and appellant went to the Brimfield apartment. Sesay explained that appellant entered the property through a window and then let her and Jones in through the door.

According to Sesay, they proceeded to tear the place up because appellant and Jones were mad at the landlord for evicting them.

In May 2009, Columbus police began investigating a string of burglaries in the area of the Sharon Green apartment complex. Steven E. Tennant testified that on May 29, 2009, he lived at 1373 Bolen Hill Avenue, which was near the Sharon Green complex. According to Mr. Tennant, on this date his home was broken into, ransacked, and several items were taken, such as jewelry, a camcorder, a camera, a laptop, and several firearms, including a .410 shotgun. Holly Frazier testified that she lived at 1320 Sharon Green Drive and that on June 2, 2009, she returned home to find that a brick had been thrown through her window. Additionally, Ms. Frazier found several items missing from her apartment, including two plasma televisions, an Xbox gaming system, a laptop computer, a cell phone, and jewelry.

Columbus Police Officer Matthew Springer testified that he was called by Columbus Police Detective Carl Covey to go to the area of 1348 Sharon Green Drive to do surveillance. While waiting for Detective Covey, Officer Springer testified that he saw two males enter 1360 Sharon Green and exit with a television and a bag. As Officer Springer approached the two men, later identified as Matthew Bunting and Donzell Whitaker, they dropped the property and ran. Bunting and Whitaker were apprehended by another officer and returned to the scene. According to Detective Covey, after searching 1348 Sharon Green, they found Ms. Frazier's laptop and Mr. Tennant's shotgun hidden in the basement.

Donzell Whitaker ("Whitaker") testified for the state as part of a plea agreement. Whitaker testified that in June 2009 he had no place to live and was therefore staying with appellant and appellant's mother at 1348 Sharon Green. According to Whitaker, he committed several burglaries with appellant. Whitaker testified that appellant would tell him what places to go to, and, once the burglaries were complete, appellant would call someone who would pay them for the stolen property, and he and appellant would split the profits.

Appellant testified on his own behalf. According to appellant, because he felt sorry for Whitaker, he allowed Whitaker to live with him beginning in April 2009. Appellant testified that he had never committed any burglaries with Whitaker or otherwise, nor did he direct anyone to do so. Additionally, appellant testified he did not negotiate any prices for stolen goods, and he was not even aware that there was stolen property in his apartment. With respect to the incident at the Brimfield apartment, appellant testified he was unaware of any eviction proceedings taking place against them.

3

According to appellant, he returned to the Brimfield apartment the night of May 3, 2008, with Sesay and Jones because their new apartment did not yet have the electricity turned on. Appellant testified that he believed he still had possession of the property because he still had a key to the Brimfield property, and he thought they did not have to leave the property until the following Monday. Appellant testified that when they got to the apartment, despite him having a key, Jones entered through a window and then let Sesay and appellant in through the back door. Once inside, appellant testified that he went to sleep in the living room while Sesay and Jones were in the basement. According to appellant, he did not damage anything at the apartment and that the damage about which Ms. Minniefield and Mr. Ndiaye testified was already there prior to May 3, 2008.

. . . [A]t the conclusion of the bench trial, appellant was found guilty of burglary and vandalism as set forth in case No. 6639 and two counts of receiving stolen property as set forth in case No. 3535. Appellant was sentenced to an aggregate term of six years and six months of incarceration. This appeal followed, and appellant brings the following four assignments of error for our review.

FIRST ASSIGNMENT OF ERROR

The trial court violated Jeffrey Johnson's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was not supported by sufficient evidence.

SECOND ASSIGNMENT OF ERROR

The trial court violated Jeffrey Johnson's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was against the manifest weight of the evidence.

THIRD ASSIGNMENT OF ERROR

Jeffrey Johnson's attorney provided him with the ineffective assistance of counsel and violated his right to due process and a fair trial where defense counsel failed to call additional witnesses to the stand to testify regarding the eviction process.

4

> FOURTH ASSIGNMENT OF ERROR
>
> Jeffrey Johnson was denied his right to due process and a fair trial because of cumulative error.

*State v. Johnson,* Nos. 10AP-137, 10AP-138, 2010 WL 4514666, at *1-3 (Ohio App. 10th Dist. Nov. 9, 2010). On November 9, 2010, the Ohio Tenth District Court of Appeals affirmed the judgment of the trial court. *Id.* On March 16, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Johnson*, 128 Ohio St.3d 1427 (2011).

On March 16, 2012, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the evidence was constitutionally insufficient to sustain his convictions (claim one); his convictions are against the manifest weight of the evidence (claim two); he was denied effective assistance of counsel because his attorney failed to call defense witnesses to testify regarding the eviction process (claim three); and he was denied a fair trial based upon cumulative error (claim four).

## STANDARD OF REVIEW

**2.   Standards**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also*

5

*Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389

> (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 120 S.Ct. 1495.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal

7

conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

### CLAIMS ONE and TWO

**State Court Determinations**

In claims one and two, Petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence. The state appellate court rejected these claims, reasoning in relevant part as follows:

> When reviewing the sufficiency of the evidence, an appellate court must:
>
>> * * * [e]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
>
> *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> This test raises a question of law and does not allow the court to weigh the evidence. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 1997-Ohio-52; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560. Consequently, when reviewing the sufficiency of the evidence, an appellate court must accept the fact finder's determination with regard to the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, ¶ 79; *State v. Worrell,* 10th Dist. No. 04AP-410, 2005-Ohio-1521, ¶ 41 ("In determining

whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction.").

*\*\*\**

Appellant was charged with burglary in violation of R.C. 2911.12, which provides in pertinent part:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> \* \* \*
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

Appellant was also charged with vandalism in violation of R.C. 2909.05, which provides in relevant part:

> (A) No person shall knowingly cause serious physical harm to an occupied structure or any of its contents.
>
> (B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:
>
> (a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more;
>
> (b) Regardless of the value of the property or the

9

> amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation.

It is appellant's position that his convictions for burglary and vandalism cannot stand because there is insufficient evidence that he committed a trespass, which is an element in both offenses. According to appellant, he believed the Brimfield apartment was still in his family's possession and there was no expectation that anyone was present or likely to be present the night of May 3, 2008. These arguments, however, are premised on a finding that the state's witnesses were not credible. An appellate court does not weigh credibility in considering an insufficiency of the evidence argument. *State v. Coit,* 10th Dist. No. 02AP-475, 2002-Ohio-7356, citing *Ruta v. Breckenridge Remy Co.* (1982), 69 Ohio St.2d 66, 68-69, 430 N.E.2d 935. Rather, the test is whether the evidence viewed in a light most favorable to the prosecution if believed would convince the average mind of the defendant's guilt beyond a reasonable doubt.

According to appellant, because he possessed a key and the eviction process was not complete, he had a legal right to access the Brimfield apartment. In *State v. Johnson* (Oct. 10, 1991), 8th Dist. No. 59096, the defendant, Johnson, argued that because his landlord failed to serve him with an eviction notice, he had a privilege to be at the house out of which he took property, and, therefore, he could not be convicted of aggravated burglary. The Eighth District Court of Appeals held that the notice requirements of landlord/tenant law were not applicable where a tenant voluntarily vacates the premises before his landlord files a complaint for eviction. Because Johnson chose to vacate the premises rather than pay rent, the court held that the moment he vacated the premises, he was no longer a tenant. The *Johnson* court further held that, when Johnson moved his belongings out and the landlord locked the door, Johnson then needed permission to re-enter the premises. The court went on to state that Johnson's "failure to seek permission before entering the house constituted an unconsented and unprivileged entry and was punishable as a trespass." *Id*.

Here, the evidence is sufficient to establish that any property interest held by appellant ended prior to his entry into the Brimfield apartment on the night of May 3, 2008. The evidence established that Mr. Ndiaye began eviction proceedings for Ms. Carson's failure to

10

pay rent. Mr. Ndiaye testified that on May 2, 2008, he was informed that Ms. Carson would be moving out and that the move would be complete by noon the following day. Therefore, Mr. Ndiaye returned to the Brimfield apartment during the evening of May 3, 2008 to change the locks. After changing the locks, Mr. Ndiaye testified that he gave the keys to the new tenant, Ms. Minniefield, who testified that she remained at the apartment that evening to clean. Ms. Kerkes testified that she saw appellant and his family pack their belongings into a U-Haul truck and leave on May 3, 2008, but that appellant returned with two others at approximately 11:00 p.m. that night. Appellant admitted that he was at the apartment the night of May 3, 2008 with Sesay and Jones and that they gained entry by climbing through a window. Despite appellant's assertion to the contrary, Sesay's testimony established that she, Jones, and appellant caused the damage to the Brimfield apartment and that they did so because appellant and Jones were upset about being evicted. Additionally, Ms. Minniefield testified that the damage she saw in the apartment on the morning of May 4, 2008 was not present when she left the apartment the prior night. Accordingly, we find the record contains sufficient evidence to support appellant's convictions for burglary and vandalism.

Appellant was also convicted of receiving stolen property in violation of R.C. 2913.51, which provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A). According to appellant, there is insufficient evidence to support his receiving stolen property convictions since his testimony established that he had no choice but to temporarily store stolen property because Whitaker was living with him at the time. This argument, however, completely disregards Whitaker's testimony that appellant not only took part in several burglaries, but also was instrumental in organizing burglaries and telling Whitaker where in the apartment to hide the stolen items. Also, according to Whitaker, he and appellant would contact a third party who would pay them for the stolen goods, and then he and appellant would split the profits. If believed, Whitaker's testimony could convince the average mind of appellant's guilt of receiving stolen property beyond a reasonable doubt, and, therefore, we find sufficient evidence to support appellant's convictions of the same.

. . . The trial judge, as trier of fact, was fully aware that Whitaker and Sesay were testifying for the state pursuant to their own negotiated

>plea agreements that arose out of the incidents herein. The trial judge simply did not find appellant's testimony to be credible with respect to either the Brimfield apartment or the stolen goods, and this was clearly within his province as trier of fact.
>
>\*\*\*
>
>[A]ppellant's convictions are . . . supported by sufficient evidence[.]

*State v. Johnson,* 2010 WL 4514666, at \*4-7.

### A. Manifest Weight of the Evidence

A federal court may only issue a writ of habeas corpus on behalf of a person in custody pursuant to the decision of a state court if his custody is in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Thus, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A manifest weight of the evidence claim is an alleged error of state law that is not cognizable in this Court. Under Ohio law, "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. . . .' *State v. Thompson*, 78 Ohio St. 3d 380, 386 (Ohio 1997) (citations omitted). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. A federal habeas court, however, may not "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court" because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted).

Here, in Claim Two, Petitioner asserts his that his convictions were against the manifest

weight of the evidence. Because a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, Petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

### B. Insufficiency of the Evidence

Petitioner also asserts that the evidence was constitutionally insufficient to sustain his convictions. A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992) (citing *Jackson,* 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson,* 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume– even if it does not appear on the record– that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Further, this Court must afford a "double layer" of deference to state court determinations about the sufficiency of the evidence. As explained in *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, established by *Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no

13

rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

As discussed by the state appellate court, Petitioner asserts he had a legal right to remain in the apartment, because the landlord failed to comply with Ohio eviction law. He complains that the State should have pursued civil, and not criminal, proceedings. Petitioner denies causing any destruction to the apartment. He further denies causing or participating in any theft or storage of stolen items. Finally, Petitioner argues that the State failed to establish the value of the items stolen.

Petitioner's arguments are not persuasive. Under Ohio law, Petitioner no longer had authority to enter or remain in the apartment once he vacated the premises. This Court defers to a state court's interpretation of its own laws and does not function as an additional state appellate court reviewing decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

Although the state appellate court did not explicitly address Petitioner's argument herein that the State failed to establish that the value of the items stolen was between $500.00 and $5000.00 to support his convictions on receiving stolen property, as charged in Counts 5 and 6 of Case Number 09 CR 06 3535, the record reflects that he raised this same argument in his appellate brief. Accordingly, it is therefore properly addressed in these proceedings. In any event, this argument fails. Count 5 involved possession of a stolen firearm, which constituted a fourth degree felony at the time of Petitioner's conviction. *See* Ohio Rev. Code § 2913.51, Amendment Notes. Count 6 involved the stolen property of Holly Frazier, *i.e.*, two lap top computers, a cell phone, two televisions, and a game. Donzell Whitaker testified he received "approximately 500 something

14

dollars" for the sale of this property, and that they split profits three ways. Trial Transcript, Exhibit 20 to Return of Writ, at PageID # 547.

When considering a claim of insufficiency of the evidence, this Court must view all of the evidence in the light most favorable to the prosecution. Under this standard, for the reasons set forth above and for the reasons already detailed by the state appellate court, the evidence plainly was constitutionally sufficient to sustain Petitioner's convictions.

Claims one and two are without merit.

### CLAIM THREE

In claim three, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to call witnesses who would have established that his landlord failed to complete the eviction process, as provided under Ohio law. Had his attorney done so, Petitioner contends, he could not have been convicted either of burglary or vandalism because he remained in legal possession of the premises.

**State Court Determinations**

The state appellate court rejected this claim, reasoning as follows:

> [A]ppellant contends he was denied his constitutional right to effective assistance of counsel when his trial counsel failed to call additional witnesses regarding the eviction process. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. *Id.* 466 U.S. at 687, 104 S .Ct. at 2064. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

15

probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068.

According to *Strickland:*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* 466 U.S. at 687, 104 S.Ct. at 2064.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* 466 U.S. at 689, 104 S.Ct. at 2065, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. *State v. Hester* (1976), 45 Ohio St.2d 71, 75, 341 N.E.2d 304.

It is appellant's contention that, had additional witnesses been called, it would have been established that the eviction process was not complete, and, therefore, the state would not have been able to establish the element of trespass, which would have resulted in a finding of not guilty on the burglary and vandalism charges.

The decision whether to call a witness is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. *State v. Samatar,* 152

16

> Ohio App.3d 311, 787 N.E.2d 691, 2003-Ohio-1639, ¶ 90, citing *State v. Williams* (1991), 74 Ohio App.3d 686, 694, 600 N.E.2d 298. Appellant has not demonstrated that counsel's failure to call additional witnesses was prejudicial. First, appellant does not direct us to any specific witness that should have been called. Secondly, appellant speculates without any evidentiary support as to what this unidentified witness's testimony may or may not have been if called to testify. Thus, it is pure speculation to conclude that the result of appellant's trial would have been different had any additional witnesses testified. *State v. Williams,* 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 35, citing *State v. Thorne,* 5th Dist. No.2003CA00388, 2004-Ohio-7055, ¶ 70 (failure to show prejudice without affidavit describing testimony of witnesses not called); *State v. Stalnaker,* 5th Dist. No. 21731, 2004-Ohio-1236, ¶ 9. This type of vague speculation is insufficient to establish ineffective assistance of counsel. *State v. Wiley,* 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 30, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Moreover, even if appellant's speculation regarding the testimony of an unknown, unidentified witness was accurate, it is unlikely that such testimony would have changed the result. As we have already discussed, eviction is not necessarily dispositive to the issue of whether a former tenant has trespassed when that tenant has voluntarily given up his possessory interest in the property. *Johnson,* supra.
>
> Accordingly, we reject appellant's argument that his counsel was ineffective and overrule his third assignment of error.

*State v. Johnson*, 2010 WL 4514666, at *7-8.

**Ineffective Assistance of Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).

The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland*

17

requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness.'" *Poole v. MacLaren*, No. 12-1705, --- F. App'x ----, 2013 WL 6284355, at *5 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Poole*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

To satisfy the second *Strickland* prong, prejudice, a petitioner "must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hale*, 512 F. App'x at 520 (quoting *Strickland*, 466 U.S. at 694). "This means [a petitioner] must show a 'substantial, not just a conceivable, likelihood of a different result.'" *Id.* (quoting *Pinholster*, 131 S.Ct. at 1403 (internal quotation marks and citation omitted)). Thus, this Court's review of ineffective assistance claims under § 2254(d) is "'doubly deferential.'" *Id.* (quoting *Pinholster*, 131 S.Ct. at 1403 (internal quotation marks and citation omitted)).

Petitioner's claim of ineffective assistance of counsel plainly lacks merit. As discussed by the state appellate court, Petitioner has failed to identify any defense witnesses that his attorney

18

should have called, but did not. Furthermore, the record fails to reflect any witnesses would have provided exculpatory evidence for the defense. Moreover, as already discussed, the issue regarding the status of the eviction would not necessarily have assisted Petitioner's defense, as he had already vacated the premises and no longer had a legal right to enter the apartment.

Claim three is without merit.

## CLAIM FOUR

In claim four, Petitioner asserts he was denied a fair trial based on cumulative error. "[T]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Gillard v. Mitchell,* 445 F.3d 883, 898 (6th Cir. 2006) (quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). To justify a grant of habeas relief, a federal court must find a violation of law that has been clearly established by the holdings of the United States Supreme Court decisions at the time of the relevant state-court decision. *King v. Bobby,* 433 F.3d 483, 490 (6th Cir. 2006). The Sixth Circuit has consistently held that a habeas petitioner cannot find relief on a claim of cumulative error by the trial court. *See, e.g., Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005) ("[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.").

Claim four is without merit.

**WHEREUPON** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                    **s/ Elizabeth A. Preston Deavers**
                                                   **Elizabeth A. Preston Deavers**
                                                   **United States Magistrate Judge**

**Date:  February 4, 2014**